UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
MARY BONACCORSY,              )
                              )
          Plaintiff,          )
                              )
     v.                       )    Civil Action No. 08-2224 (RWR)
                              )
DISTRICT OF COLUMBIA,         )
                              )
          Defendant.          )
_____)
```

MEMORANDUM OPINION

Plaintiff Mary Bonaccorsy brings this action against her employer, the District of Columbia ("D.C."), alleging federal constitutional violations and several common law torts arising out of an altercation begun by a co-worker and a fifteen-day suspension Bonaccorsy sustained in its wake.  D.C. has moved to dismiss the complaint or in the alternative for summary judgment.  Because D.C. has shown that Bonaccorsy failed to provide sufficient notice of her common law tort claims, that her claim alleging municipal liability fails to sufficiently allege that she was harmed as a result of a custom or policy, and that she failed to exhaust her administrative remedies before filing her 42 U.S.C. § 1981 claim for discrimination, the motion to dismiss or in the alternative for summary judgment will be granted.

BACKGROUND

Bonaccorsy, a detective employed by the District of Columbia Metropolitan Police Department ("MPD"), alleges that on

-2-

February 1, 2008, she traveled to the Fifth District police
station to investigate allegations of a threat against another
MPD officer.  (Compl. ¶ 3.)  While there, MPD Sergeant Cassandra
Gudger threatened Bonaccorsy regarding a "relationship
[Bonaccorsy and Gudger] shared with MPD Detective . . . Ray
Crawford" and said Crawford supported Gudger confronting
Bonaccorsy.  (Compl. ¶¶ 4-7.)  As Bonaccorsy left the station,
Gudger continued the confrontation and said that "it was not
over."  (Id. ¶ 8.)  On the same day, Bonaccorsy sought and was
granted an emergency temporary protective order in the District
of Columbia Superior Court against Gudger and Crawford.  (Id.
¶¶ 8-9.)  Following a hearing three days later, the court
extended the temporary protective order for a period of 14 days.
(Id. ¶ 10.)

    The MPD conducted an internal affairs investigation of the
facts surrounding Bonaccorsy's request for a temporary protective
order.  It found that contrary to the statements she made in her
request to the court when she sought the temporary protective
order, Bonaccorsy was not actually in fear of Crawford.  (Compl.
¶ 11; Def.'s Mem. in Supp. of Mot. to Dismiss or for Summ. J.
("Def.'s Mem.") at 1-2.)  Based upon that determination, the MPD
served Bonaccorsy with a notice of proposed adverse action.
It charged her with engaging in behavior that was prejudicial to
the reputation and good order of the police force in violation of

-3-

MPD General Order 120.21, and proposed a 15-day suspension as
punishment.  (Compl. ¶ 19; Def.'s Mem. Ex. 1.)  Bonaccorsy
opposed the charge and the proposed punishment.  The Commander of
the Office of Human Resource Management issued a final decision
finding that Bonaccorsy violated MPD General Order 120.21 and
upholding the proposed 15-day suspension.  Among other things,
the Commander found that Bonaccorsy sought the protective order
against Crawford knowingly withholding from the judges facts
belying her claim to be in fear of Crawford, including that
Crawford had never displayed any behavior during their
relationship that ever put her in fear, that she never complained
to Crawford's superiors that she feared him, and that indeed she
was dismayed that Crawford was ending the relationship.  (Def.'s
Mem. Ex. 2 at 2-3.)  Bonaccorsy appealed the suspension to the
Chief of the MPD, who denied her appeal on September 15, 2008.
(Def.'s Mem. Ex. 3.)

On October 10, 2008, D.C.'s Office of Risk Management
received a letter from Bonaccorsy dated September 25, 2008 that
purported to be Bonaccorsy's notice that claimants are required
to provide to the Mayor of the District of Columbia under D.C.
Code § 12-309 of the time, place, cause and circumstances within
six months of any claim arising against the District of Columbia
for unliquidated damages.  (Def.'s Mem. Ex. 5.)  It alleged that
on February 1, 2008, Gudger had assaulted and threatened her,

-4-

that her suspension violated Title VII and the First Amendment
because it was retaliation against her for exercising her right
to petition the courts for a protective order, and that the
suspension caused her extreme emotional distress and harmed her
reputation.  (Id.)  D.C.'s Office of Risk Management replied that
her claims failed to provide the timely and complete notice
within the required six-month period.  (Def.'s Mem. Ex. 6.)
Meanwhile, on October 6, 2008, D.C. received a letter from the
union to which Bonaccorsy belonged, stating that "in accordance
with . . . the Collective Bargaining Agreement, the [Fraternal
Order of Police, Metropolitan Police Labor Committee] demands
arbitration on behalf of Detective Mary A. Bonaccorsy[.]"  The
letter stated that the Union sought dismissal of Bonaccorsy's
suspension as a remedy.  (Def.'s Mem. Ex. 4.)

On December 9, 2008, Bonaccorsy filed the complaint in this
matter against the District of Columbia containing nine counts:
retaliation in violation of Bonaccorsy's rights under the First
Amendment of the U.S. Constitution as protected through 42 U.S.C.
§ 1983 (Count I); discrimination in violation of 42 U.S.C. § 1981
(Count II); defamation (Count III); assault in violation of D.C.
Code §§ 403-407 (Counts IV, V, and VI); malicious prosecution
(Count VII); intentional infliction of emotional distress (Count
VIII), and conspiracy to commit tortious acts (Count IX).

-5-

(Compl. ¶¶ 22-51.)  Her arbitration was still pending.  (Def's Mem. Ex. 5.)

The District of Columbia moves for summary judgment on Counts III through IX based on Bonaccorsy's purported failure to provide the timely and ample notice to the Mayor required by D.C. Code § 12-309[1] (Def.'s Mem. at 5-8), and on Count II claiming that Bonaccorsy failed to exhaust her administrative remedies.[2] (Id. at 9-11.)  D.C. further moves to dismiss Count I arguing that the complaint fails to state a viable claim of municipal liability.  (Id. at 8-9.)  Bonaccorsy opposes D.C.'s motion, and cross-moves for summary judgment on all counts, asserting that

---

[1] Bonaccorsy moves to strike D.C.'s dispositive motion and its opposition to her motion for summary judgment as non-responsive, arguing that D.C. was required to file an answer to her complaint and was not allowed to file a dispositive motion. While a motion to dismiss is not considered a responsive pleading under Federal Rule of Civil Procedure 15(a), see Hurson Assocs. v. Glickman, 229 F.3d 277, 283 (D.C. Cir. 2000), a defendant is allowed to respond to a complaint by filing either an answer or a dispositive motion.  See United States ex rel. Schweizer v. Oce, N.V., 577 F. Supp. 2d 169, 172 (D.D.C. 2008) (stating that "[t]he Rules provide [the defendant] the option of filing a pre-answer motion to dismiss the complaint"); Fed. R. Civ. P. 12(a)(4). Therefore, Bonaccorsy's motion to strike will be denied.

[2] Because the remedy for filing a claim prematurely before pending administrative remedies have been exhausted is more appropriately to dismiss the claim rather than to enter a judgment precluding further litigation, see Rattigan v. Gonzales, 503 F. Supp. 2d 56, 68 (D.D.C. 2007) (stating that "[d]ismissal results when a plaintiff fails to exhaust administrative remedies"), D.C.'s motion as to Count II will be treated as one to dismiss.

-6-

"the undisputed facts support entry of summary judgment" in favor
of Bonaccorsy.[3]  (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 4.)

DISCUSSION

Summary judgment may be appropriately granted when the
moving party demonstrates that there is no genuine issue as to
any material fact and that moving party is entitled to judgment
as a matter of law.  Fed. R. Civ. P. 56(c).  "In considering a
motion for summary judgment, [a court is to draw] all
'justifiable inferences' from the evidence . . . in favor of the
nonmovant."  Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d
181, 189 (D.D.C. 2008) (quoting Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1986)); Matsushita Elec. Indus. Co. v. Zenith
Radio Corp., 475 U.S. 574, 587 (1986).  However, a non-moving
party cannot defeat summary judgment by "simply show[ing] that
there is some metaphysical doubt as to the material facts."
Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009) (quoting
Matsushita, 475 U.S. at 586).  "Briefs containing mere
allegations or merely denying the movant's pleading are not
enough to prevent summary judgment; instead, a non-movant must go
beyond the pleadings to proffer specific facts rebutting the
movant's assertions."  Graham v. Holder, Civil Action No. 03-1951

---

[3] D.C. moved for leave to file two days late its reply to
the plaintiff's opposition.  Because Bonaccorsy did not show how
she would be prejudiced by a two-day extension, D.C.'s motion for
leave to file its reply late will be granted.

(RWR), 2009 WL 3088816, at *3 (D.D.C. September 29, 2009) (citing Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007), and Burke v. Gould, 286 F.3d 513, 517-18 (D.C. Cir. 2002)).  "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting Anderson, 477 U.S. at 250).  A genuine issue is present in a case where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," in contrast to a case where the evidence is "so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 248, 252.

A complaint can be dismissed under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff fails to state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, acceptable as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  The complaint must be construed in the light most favorable to the

-8-

plaintiff and "the court must assume the truth of all well-pleaded allegations." Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).  If a plaintiff fails to allege sufficient facts to support a claim, that claim must be dismissed.  See Twombly, 550 U.S. at 555-556.

I.   NOTICE UNDER D.C. CODE § 12-309

The District of Columbia asserts that the common law claims pled in Counts III through IX should be dismissed because the plaintiff failed to provide timely and proper notice of a claim under D.C. Code § 12-309.  Under that provision,

> [a]n action may not be maintained against the District
> of Columbia for unliquidated damages to person or
> property unless, within six months after the injury or
> damage was sustained, the claimant, his agent, or
> attorney has given notice in writing to the Mayor of
> the District of Columbia of the approximate time,
> place, cause, and circumstances of the injury or
> damage.

D.C. Code § 12-309.  The notification requirement is strictly applied, and the provision is "construed narrowly" against claimants.  See Snowder v. Dist. of Columbia, 949 A.2d 590, 600 (D.C. 2008) (quoting Gross v. Dist. of Columbia, 734 A.2d 1077, 1081 (D.C. 1999)); Dist. of Columbia v. Dunmore, 662 A.2d 1356 (D.C. 1995).  "Notice of one type of injury . . . is not notice of another type of injury incurred in the same incident." Breen v. District of Columbia, 400 A.2d 1058, 1062 (D.C. 1979); see also Washington v. Dist. of Columbia, 429 A.2d 1362, 1366 (D.C. 1981) (stating that a "written notice . . . will not suffice if,

under a reasonable construction, it suggests a basis for the claim that differs from the one eventually alleged").

Bonaccorsy's sole argument in her opposition regarding her notice is a legal one -- that § 12-309 does not apply to the common law tort claims found in Counts III through IX because "[t]he monies sought by the plaintiff are not 'unliquidated' but are in fact 'liquidated' damages, [and] can be computed." (Pl.'s Opp'n at 14-15.)  Her argument, though, is unavailing.  Damages are liquidated and outside of the purview of § 12-309 if they are for "an easily ascertainable sum certain," such as back pay awards in discrimination cases.  See Beeton v. Dist. of Columbia, 779 A.2d 918, 925 (D.C. 2001) (quoting Hartford Accident & Indemnity Co. v. Dist. of Columbia, 441 A.2d 969, 974 (D.C. 1982)).  Unliquidated damages are "damages that cannot be determined by a fixed formula and must be established by a judge or jury."  Bowie v. Gonzales, 433 F. Supp. 2d 24, 28 (D.D.C. 2006); see also Snowder, 949 A.2d at 600 ("Tort claims . . . are considered unliquidated.").  Bonaccorsy provides absolutely no support or authority for her contrary position, and does not analyze or explain why the damages she seeks in Counts III through IX are liquidated, easily ascertainable damages that could be determined by a fixed formula.  Bonaccorsy's argument need not be addressed any further.  See, e.g., City of Waukesha v. E.P.A., 320 F.3d 228, 254 (D.C. Cir. 2003) (stating that

-10-

courts need not address "asserted but unanalyzed contention[s]");
Arizona v. Shalala, 121 F. Supp. 2d 40, 46 n.4 (D.D.C. 2000)
(refusing to address or countenance arguments that were raised
"without citing any authority").

Bonaccorsy has not factually countered D.C.'s assertion that
she did not timely provide the notice required by § 12-309
regarding her assault claims, nor has she addressed D.C.'s
argument that her letter did not provide a reasonable basis for
the District to be put on notice of her causes of action for
defamation, malicious prosecution, intentional infliction of
emotional distress, and conspiracy to commit tortious acts
claims.  Nothing in the record disproves that Bonaccorsy's
September 25 notice of her February 1 assault claims fell outside
the required six-month period.  Her notice does not set forth the
time, place, cause and circumstances of the claims of
defamation,[4] malicious prosecution[5] and conspiracy alleged in the
instant complaint, and as reasonably construed, the notice does

---

[4] The notice does not even specify what if any statement was
false.  Curiously, Count III seeks damages not against D.C. but
rather against Crawford (Compl. ¶ 32) who has been neither named
in the complaint as a defendant (id. ¶¶ 1-2) nor served with
process in this case.

[5] Nothing in either the notice or Count VII reflects that
Bonaccorsy ultimately prevailed in the proceeding against her, an
essential element of a ripe common law cause of action for
malicious prosecution.  See Joeckel v. Disabled American
Veterans, 793 A.2d 1279, 1282 (D.C. 2002) (citing Morowitz v.
Marvel, 423 A.2d 196, 198 (D.C. 1980)).

-11-

not suggest a basis for them.  The notice may come closest to
satisfying § 12-309 regarding the emotional distress claim (see
Def.'s Mem. Ex. 5 at 3 ¶¶ 12-13 (alleging that the proposed and
final notices of suspension caused her extreme emotional
distress)), but as she has neither rebutted nor addressed D.C.'s
argument to the contrary, she has waived or conceded the issue.
See CSX Transp., Inc. v. Commercial Union Ins., Co., 82 F.3d 478,
482-83 (D.C. Cir. 1986); Felter v. Salazar, Civil Action No. 02-
2156 (RWR), 2010 WL 165700, at *2 n.2 (D.D.C. Jan. 15, 2010).
Thus, no material facts are in dispute, and D.C. is entitled to
judgment as a matter of law on Counts III through IX.

II.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

       Section 1981 of Title 42 of the U.S. Code grants certain
rights, including to sue and enjoy all benefits of a contractual
relationship free from racial discrimination.  In Count II of her
complaint, Bonaccorsy alleges that MPD Chief Lanier, Assistant
Chief Peter Newsham, Commander Jennifer Green, Gudger, and
Crawford violated § 1981 "when they initiated an adverse action
against her for seeking a TPO."  (Compl. ¶ 26.)  D.C. challenges
Count II of the complaint, arguing that Bonaccorsy failed to
exhaust her administrative remedies on Count II because
Bonaccorsy, through her union, initiated procedures to arbitrate

-12-

her suspension, only to file this complaint before the
arbitration had been completed.[6]

"It is a 'long-settled rule of judicial administration that
no one is entitled to judicial relief for a supposed or
threatened injury until the prescribed administrative remedy has
been exhausted.'" Johnson v. Dist. of Columbia, 368 F. Supp. 2d
30, 38 (D.D.C. 2005) (quoting Myers v. Bethlehem Shipbuilding
Corp., 303 U.S. 41, 50-51 (1938)).  "In addition to preserving
the 'autonomy of the administrative agency . . . to exercise its
expertise and discretion on appropriate matters,' . . . a robust
exhaustion requirement 'also promotes effective and efficient
judicial review by ensuring that such review is of a fully
developed factual record, and undertaken with the benefit of the
agency's exercise of discretion or application of expertise.'"
Johnson, 368 F. Supp. 2d at 38 (quoting Randolph-Sheppard Vendors
of America v. Weinberger, 795 F.2d 90, 104 (D.C. Cir. 1986)).
Further, "requiring exhaustion may further promote judicial
efficiency in cases where 'decision by the agency may obviate the
need for a judicial decision on the issue.'"  Johnson, 368 F.
Supp. 2d at 38 (quoting Athlone Indus. v. Consumer Products
Safety Commission, 707 F.2d 1485, 1488 (D.C. Cir. 1983)).  "In
federal court, state administrative exhaustion requirements are
considered 'non-jurisdictional.'"  Hoey v. Dist. of Columbia, 540

---

[6] D.C. raised no other issues regarding Count II.

-13-

F. Supp. 2d 218, 226 (D.D.C. 2008) (quoting <u>Washington v. Dist.</u>
<u>of Columbia</u>, 538 F. Supp. 2d 269, 277 (D.D.C. 2008)).

"Nevertheless, a failure to exhaust state administrative remedies
implicates 'federalism and comity considerations . . . tilting
the scales . . . in favor of requiring exhaustion.'" <u>Hoey</u>, 540
F. Supp. 2d at 227 (quoting <u>Washington</u>, 538 F. Supp. 2d at 277).

"Where . . . a plaintiff neglects to exhaust fully his available
state administrative remedies, dismissal for failure to
sufficiently plead a necessary element of a federal cause of
action is appropriate." <u>Hoey</u>, 540 F. Supp. 2d at 227 (internal
quotations and citations omitted). "Couching [a] claim in
constitutional terms will not immunize it from dismissal pursuant
to the exhaustion requirement." <u>Id</u>. at 228 (quoting <u>Washington</u>,
538 F. Supp. 2d at 278). Litigants may not bypass administrative
appeals simply because they assert that one or all of their
claims are constitutional in nature. <u>Marine Mammal Conservancy</u>
<u>v. Department of Agriculture</u>, 134 F.3d 409, 413 (D.C. Cir. 1998).

Bonaccorsy, as an employee of the District of Columbia, was
subject to the provisions of the District of Columbia
Comprehensive Merit Personnel Act ("CMPA"), D.C. Code § 1-601.1
<u>et seq</u>. The CMPA assures "that the District of Columbia
government shall have a modern flexible system of public
personnel administration, which shall . . . [e]stablish impartial
and comprehensive administrative or negotiated procedures for

-14-

resolving employee grievances." D.C. Code § 1-601.2(a)(5);

Robinson v. Dist. of Columbia, 748 A.2d 409, 411 (D.C. 2000)

(stating that "[w]ith few exceptions, the CMPA is the exclusive

remedy for a District of Columbia public employee who has a

work-related complaint of any kind"). With the CMPA, the

District "sought to create a mechanism for addressing virtually

every conceivable personnel issue among the District, its

employees, and their unions -- with a reviewing role for the

courts as a last resort, not a supplementary role for the courts

as an alternative forum." Alexis v. Dist. of Columbia, 44 F.

Supp. 2d 331, 349 (D.D.C. 1999) (internal quotation omitted).

D.C. Code § 1-616.52 states that an appeal from a

> suspension of 10 days or more may be made to the Office
> of Employee Appeals. When, upon appeal, the action or
> decision by an agency is found to be unwarranted by the
> Office of Employee Appeals, the corrective or remedial
> action directed by the Office of Employee Appeals shall
> be taken in accordance with the provisions of
> subchapter VI of this chapter within 30 days of the
> [Office of Employee Appeal's] decision.

D.C. Code § 1-616.52(b). The CMPA authorizes the Office of

Employee Appeals to hear related complaints regarding employer

conduct involving personnel ratings, employee grievances, and

adverse actions. Dist. of Columbia v. Thompson, 593 A.2d 621,

635 (D.C. 1991). Thus, Bonaccorsy had a remedy for the 15-day

suspension of which she complains.

Bonaccorsy disputes neither the existence of the

administrative remedies available nor the assertion that she had

-15-

not exhausted them before filing this action.  Her sole argument in opposition to D.C.'s motion to dismiss Count II is that "the action taken by the District of Columbia against Det. Bonaccorsy was in violation of the law.  There existed the presumption of reviewability."  (Pl.'s Opp'n at 16.)  To support her position, Bonaccorsy cites Dist. of Columbia v. Sierra Club, 670 A.2d 354 (D.C. 1996), which in no way pertains to the issue raised by D.C. In Sierra Club, the District of Columbia Court of Appeals held that the District of Columbia Recycling Law provided a private cause of action which an advocacy group could assert seeking an injunction that would force the District to collect recyclable materials in the manner described by the Act.  Id. at 360.  The plaintiff in that case did not have administrative remedies to exhaust, and the case did not involve an employment related dispute brought by a District employee.  Treating D.C.'s motion regarding Count II as one to dismiss,[7] then, Bonaccorsy has failed to state a claim for which relief can be granted, and Count II of the complaint will be dismissed.

III. MUNICIPAL LIABILITY

The defendant moves to dismiss Count I of the complaint arguing that the plaintiff failed to allege a sufficient basis for municipal liability under 42 U.S.C. § 1983 for an alleged deprivation of rights under color of law.

---

[7] See n.2, supra.

-16-

A plaintiff suing the District of Columbia under § 1983 "must allege not only a violation of his rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation."  Warren, 353 F.3d at 38. A municipality can be held liable under section 1983 when the municipality's "policy or custom . . . inflicts the injury." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). However, a municipality cannot be held liable under 42 U.S.C. § 1983 based on a theory of respondeat superior liability.  Id. at 691-94.  "It is the plaintiff's 'burden to establish that a municipality has a custom or practice abridging [his] constitutional or statutory rights.'"  Hawkins v. Lanier, 605 F. Supp. 2d 291, 294 (D.D.C. 2009) (quoting B.R. v. Dist. of Columbia, 524 F. Supp. 2d 35, 40 (D.D.C. 2007)).  A plaintiff can show that a municipality's policy or custom caused her injury by showing that "the municipality or one of its policymakers explicitly adopted the policy that was 'the moving force of the constitutional violation.'"  Warren, 353 F.3d at 39 (citing Monell, 436 U.S. at 634).  "Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom."  Warren, 353 F.3d at 39 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123-30 (1988)).  "Or the municipality may not have responded 'to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the

-17-

need will result in constitutional violations.'" Warren, 353
F.3d at 39 (quoting Baker v. Dist. of Columbia, 326 F.3d 1302,
1306 (D.C. Cir. 2003)).  However, "[p]roof of a single incident
of unconstitutional activity is not sufficient to impose
liability under Monell, unless proof of the incident includes
proof that it was caused by an existing, unconstitutional
municipal policy."  Oklahoma City v. Tuttle, 471 U.S. 808, 823-24
(1985); see also Byrd v. Dist. of Columbia, 297 F. Supp. 2d 136,
139 (D.D.C. 2003) (citing Parker v. Dist. of Columbia, 850 F.2d
708, 711-12 (D.C. Cir. 1988)).

    In Count I of her complaint, Bonaccorsy alleges that MPD
agents "did violate her right to be free from retaliatory acts,
at the hands of agents of the government, in violation of her
First Amendment rights," and they "knew or should have known that
their actions violated Det. Bonaccorsy's Constitutional Rights,
yet knowingly and willfully violated those rights" causing her
harm.  (Compl. ¶ 22-23.)  Incorporating ¶ 19 of the complaint,
Count I alleges that the MPD Chief reviewed the disciplinary
action and denied the appeal.  (Id. ¶ 19.)

    Here, Bonaccorsy's claim does not sufficiently allege that a
policy or custom caused her harm.  While she does allege that a
policy maker adopted a suspension in her case that violated her
First Amendment rights, she cites only this single incident of a
purported violation and does not connect it to an existing,

unconstitutional D.C. policy, and she does not allege that other
MPD employees were similarly retaliated against for exercising
their First Amendment rights.  In a similar § 1983 case, <u>Sanders
v. Dist. of Columbia</u>, 522 F. Supp. 2d 83 (D.D.C. 2007), the
plaintiff, an MPD police officer, alleged that the MPD, one of
its captains and its Chief, violated his First Amendment right to
free speech by investigating his conduct in retaliation for his
decision to speak out on a matter of public concern, causing him
harm.  <u>Id.</u> at 86-87.  The plaintiff alleged that D.C.'s Chief of
Police at the time ratified retaliation against Sanders by
declining to reinstate Sanders after Sanders sought reinstatement
to his previous position.  <u>Id.</u>  D.C. moved to dismiss his
complaint under Rule 12(b)(6), arguing that Sanders failed to
state a claim for which relief could be granted because he failed
to allege that D.C. had a policy or practice of retaliating
against employees for exercising their First Amendment right to
free speech.  <u>Id.</u> at 87-88.  The court agreed with D.C., stating
that

> [Sanders] has not alleged that the District of Columbia
> had a policy or practice of retaliating against
> employees for exercising the right to free speech under
> the First Amendment or that he suffered injury because
> of any such custom or policy.  Nor has plaintiff
> pointed to any other employee who suffered similar
> retaliation.  The policy or custom must be pervasive to
> support municipal liability, <u>Carter v. Dist. of
> Columbia,</u> 795 F.2d 116 (D.C. Cir. 1986), and the Court
> finds that the one incident of alleged retaliation
> against Sanders does not qualify as pervasive.

-19-

Plaintiff asserts that he has alleged sufficient facts on this point, but the Court concludes that he has not. Id. at 88.  In another § 1983 case, DuBerry v. Dist. of Columbia, 582 F. Supp. 2d 27, 39 (D.D.C. 2008), the court entered judgment in favor of D.C. on the plaintiff's claim that D.C. violated his Fifth Amendment equal protection rights when his employment was terminated by a reduction in force that was approved by the Director of D.C.'s Department of Corrections.  The court held that the plaintiff failed to sufficiently connect his harm to a policy or practice of D.C. because the plaintiff had "not produced any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself."  Id.  The court rejected the plaintiff's argument that a policy-maker employed by D.C. ratified unconstitutional activity when the Department's director "ultimately approved" the decision of which the plaintiff complained because the Director's approval did "not mean that the Department has an official custom, practice, or policy of discriminating against the disabled in its employment practices.  Were it otherwise, nearly every act could impute Section 1983 liability to the government."  Id.  A complaint that does not sufficiently allege harm caused by a municipality's policy or custom "fails to allege a necessary element of liability under § 1983, and that claim must be dismissed."

-20-

<u>Hawkins</u>, 605 F. Supp. 2d at 295.  Accordingly, Count I of Bonaccorsy's complaint will be dismissed.

CONCLUSION

The District of Columbia has shown that Bonaccorsy failed to provide sufficient notice of her common law tort claims, that her claim alleging municipal liability fails to allege that she was injured as the result of a policy or practice of the District of Columbia, and that she failed to exhaust her administrative remedies before filing her claim for discrimination in violation of 42 U.S.C. § 1981.  Therefore, the motion to dismiss or in the alternative for summary judgment will be granted.  An appropriate order accompanies this memorandum opinion.

SIGNED this 12th day of February, 2010.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge